IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DANIELE P.,**[1]

      Plaintiff,

      v.

**COMMISSIONER OF SOCIAL SECURITY,**

      Defendant.

Civ. No. 3:18-cv-01576-CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

    Plaintiff Daniele P. seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI). For the reasons below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

### BACKGROUND[2]

    Plaintiff was born on November 4, 1972. Tr. 294. She has a high school education. Tr. 41. In 2007-2008, Plaintiff was diagnosed with multiple sclerosis (MS) following persistent massive migraines and an MRI demonstrating lesions. She also suffers from Sjogren's syndrome, cervical spine degenerative disc disease (DDD), and depressive disorder.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties, and any relations, in this case.
[2] The following recitation constitutes a summary of the pertinent evidence within the Administrative Record and does not reflect any independent finding of fact by the Court. Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 9.

On October 23, 2014, Plaintiff protectively filed an application for DIB, with an amended alleged onset date of March 14, 2013, and a date last insured of December 31, 2014. Tr. 15, 18, 294-297. On February 26, 2015, she also protectively filed an application for SSI. Tr. 15, 309-320. The applications were denied initially and upon reconsideration, and a hearing was requested. Tr. 208-222. A hearing was held before Administrative Law Judge (ALJ) Allen G. Erickson in Salem, Oregon on August 1, 2017. Tr. 35-98. The ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. 27. The claimant filed a request for review by the Appeals Council, which was denied. Tr. 1-6. Accordingly, the ALJ's decision became the final decision of the agency from which Plaintiff seeks review.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

See also *Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2014.

2. Plaintiff did not engage in substantial gainful activity from the amended alleged onset date of March 14, 2013.

3. Plaintiff has the following severe impairments: multiple sclerosis; Sjogren's syndrome; cervical spine degenerative disc disease (DDD); depressive disorder.

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

5. Plaintiff has the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) 416.967(a). She can occasionally climb ramps and stairs. She cannot climb ladders, ropes, and scaffolds. She can occasionally balance, stoop, crouch, kneel, and crawl. She can occasionally use foot controls bilaterally. She can tolerate occasional exposure to vibration, temperature extremes, humidity extremes, and hazards in the workplace, such as moving machinery and unprotected heights. She can understand, remember, and apply detailed, but not complex, instructions.

6. Plaintiff is unable to perform any past relevant work.

7. Plaintiff was born on November 4, 1972 and was 40 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date.

8. Plaintiff has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not an issue because material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

Consequently, the ALJ concluded that Plaintiff is not disabled as defined by the Social Security Act.  Tr. 34-35.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions."  *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  Variable interpretations

of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues:

1. Did the ALJ properly evaluate the opinions of Plaintiff's medical sources?

2. Did the ALJ properly determine that Plaintiff's impairments do not meet or equal a listing at Step Three?

3. Did the ALJ properly evaluate Plaintiff's subjective symptom testimony?

The Court finds that the ALJ erred by improperly rejecting the opinion of Plaintiff's treating physician, and by rejecting Plaintiff's subjective symptom testimony. For these reasons, the ALJ's decision should be reversed and remanded for further proceedings. On remand, the ALJ shall properly consider Dr. Cohan's opinion and re-evaluate Plaintiff's subjective complaints whether Plaintiff meets the listing for Multiple Sclerosis in light of that opinion. Plaintiff also raises an issue regarding lay witness testimony, and that testimony should be re-considered on remand as well.

**I.    The ALJ improperly evaluated the opinion of Dr. Cohan, Plaintiff's treating physician.**

In social security cases, there are three categories of medical opinions: those that come from treating, examining, and non-examining doctors. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2008). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202. Treating providers are "employed to cure and [have] a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). A contradicted opinion by a treating doctor may only be rejected for specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632. The opinion of a non-examining physician cannot by itself constitute substantial evidence to reject the opinion of a treating physician. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). Even where an examining physician's opinion is contradicted by another doctor, the ALJ may only reject it with "specific and legitimate" reasons supported by substantial evidence. *Id.* at

Page 7 of 18 – OPINION and ORDER

1164; *accord Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). Medical experts (ME) are considered experts in the Social Security disability programs, and their opinions may be entitled to great weight if they are supported by the record. *See* 20 C.F.R. §§ 404.1513(b), 404.1527. Opinions supported by explanations are given more authority than those that are not, as are opinions of specialists directly relating to their specialties. *Holohan*, 246 F.3d. at 1202. However, an ALJ considers all relevant medical evidence and is responsible for resolving its conflicts. 20 C.F.R. §§ 404.1527, 416.927; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

On July 24, 2017, Plaintiff's treating physician since at least April 2009, Dr. Stanley Cohan, MD, PhD, provided a medical source statement. Tr. 724-727. Therein, he stated the following: she has been diagnosed with relapsing-remitting multiple sclerosis, migraine headaches, vertigo, GERD with esophagitis, Sjogren's syndrome, vitamin D deficiency, and asthma; her symptoms include muscle spasms, fatigue, restless leg syndrome, vertigo, depression, and an overactive bladder; Dr. Cohan concluded the following based on Plaintiff's impairments and symptoms: she meets the listing for multiple sclerosis; she is unable to maintain even a sedentary job on a regular, continuing basis due to slow mental processing speed, poor concentration, and poor short-term memory; her symptoms would likely increase if placed in a competitive work environment; and her impairments have existed since on or before December 31, 2014. Tr. 726-727.

Despite noting Dr. Cohan's specialized expertise in multiple sclerosis, longstanding treatment relationship with Ms. Powley, and consistency in opinions – as he previously opined similar disabling limitations in 2011, Tr. 468-471 – the ALJ rejected Dr. Cohan's 2017 findings, stating the following:

Page 8 of 18 – OPINION and ORDER

> However, the undersigned also recognizes that these opinions are not consistent with the claimant's complaints and treatment during the period at issue. She has only seen her doctor at regular six-month follow-up intervals, and she even missed one of these appointments in May 2014. This strongly suggests that the claimant has not felt the need to seek treatment more regularly than these follow up appointments, which are intended as a way to check in with her and see how she is doing even if she is doing well. The claimant regularly reported no worsening of her symptoms, which reflects that she has remained stable over time. She has also remained very active, exercising frequently, and biking daily. The claimant testified she had experienced a general worsening of her impairments since the amended alleged onset date, but such worsening is not reflected in the treatment notes throughout the period at issue. Thus, while the opinions of the claimant's treating physician, who is also a multiple sclerosis specialist, are opinions that would be highly persuasive were they to have significant evidentiary support, the lack of any such support in the claimant's treatment records means these opinions are due little weight.

Tr. 26-27.

The ALJ erred by discounting this opinion with reasons that are not specific and legitimate, and supported by substantial evidence. The Court agrees with Plaintiff that the ALJ appears to have conflated the standard for evaluating a treating physician's opinion with the standard for evaluating subjective symptom testimony of the Plaintiff. Nothing in Dr. Cohen's report or in the ALJ's evaluation of the report indicates that the report is based solely on Plaintiff's subjective complaints, so this is not an appropriate standard for evaluation. For example, failing to seek treatment or failing to follow treatment advice can be reasons to discount subjective symptom testimony: "We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina*, 674 F.3d at 1113 (quoting *Tomasetti*, 533 F.3d at 1039) (internal quotation marks omitted); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("Unexplained, or inadequately explained, failure to seek

treatment," absent a good reason). However, here, not only was the ALJ not evaluating Plaintiff's subjective symptom testimony (i.e. "credibility"), but there were good explanations in the record for her actions.

First, her lack of treatment at times throughout the record was due to financial and transportation constraints. Tr. 57-58, 666. Additionally, her condition was stable, and there are no indications in the record that she failed to follow her prescribed treatment or medication regimen. Thus, her absence at one routine check-up appointment is not a convincing reason to discredit the treating physician's report.

Second, as discussed by Plaintiff, physical activity is commonly prescribed to MS patients to alleviate symptoms, and the ALJ overstated Plaintiff's testimony regarding her physical activity. She did not report that she was "very active, exercising frequently, and biking daily," but instead, treatment notes from October 2015 show that she stated she was currently active usually every day and biking when the weather was good. Tr. 591. Her testimony clarified that she was walking more often at that time to stay active, and the corresponding treatment note showed weight loss. Tr. 53, 591. Even if she was as active as the ALJ stated, the Court notes that a lack of physical activity and exercise, when prescribed by a physician to help alleviate symptoms, is often used by an ALJ to discredit the claimant's subjective complaints and his or her commitment to mitigating and improving functionality. This kind of "Catch-22" puts claimants in the impossible situation of being discredited no matter what they do; if they attempt to exercise, they're not disabled, and if they don't, they're failing to comply with treatment. Here, the fact that Plaintiff attempted to stay physically active and exercise when possible – as recommended by her doctor – is not a convincing reason to discount the opinion of a physician with a high level of expertise and a longstanding treatment relationship with Plaintiff.

Finally, the ALJ points to Plaintiff's testimony that "she had experienced a general worsening of her impairments since the amended alleged onset date, but such worsening is not reflected in the treatment notes throughout the period at issue." Once again, this might speak to the credibility of Plaintiff's subjective symptoms, but not the medical opinion of a treating physician, whose evaluation was not solely based on Plaintiff's subjective complaints. As a treating physician under the SSA rules in place prior to March, 2017, Dr. Cohen's opinion was entitled to controlling weight because it was consistent with the substantial evidence in the record and it was supported by medically acceptable clinical findings. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Because the ALJ failed to properly evaluate the medical opinion of a treating physician who was also an expert in his field, this case should be reversed and remanded for further proceedings.

**II.     The ALJ did not properly evaluate whether Plaintiff's impairments meet the listing for Multiple Sclerosis.**

At step three, the ALJ is tasked with determining if one or more of a claimant's severe impairments "meets or equals" one of the presumptively disabling impairments listed in the SSA regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "If you have an impairment which meets the duration requirement and is listed in [20 C.F.R. Part. 404, Subpart P,] [A]ppendix 1 or is equal to a listed impairment, the SSA will find you disabled without considering your age, education, and work experience." 20 C.F.R. §§ 404.1520(d), 416.920(d). An opinion that a Plaintiff is disabled (or that she meets or equals a Listing) is not considered a medical opinion under the Act. However, the ALJ must nonetheless consider the opinion along with "all of the medical findings and other evidence that support a medical source's statement that you are disabled." No special significance is given to opinions on the issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d).

Plaintiff claims that the ALJ failed to properly find that she meets the Listing for 1.04, Disorders of the spine, and 11.09, Multiple Sclerosis. Appendix 1 of the SSA regulations provides the following for those listings:

> **1.04 Disorders of the spine** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).
>
> **11.00 Neurological disorders**
> Disorganization of motor function means interference, due to your neurological disorder, with movement of two extremities; i.e., the lower extremities, or upper extremities (including fingers, wrists, hands, arms, and shoulders). By two extremities we mean both lower extremities, or both upper extremities, or one upper extremity and one lower extremity. All listings in this body system, except for 11.02 (Epilepsy), 11.10 (Amyotrophic lateral sclerosis), and 11.20 (Coma and persistent vegetative state), include criteria for disorganization of motor function that results in an extreme limitation in your ability to:
> Stand up from a seated position; or
> Balance while standing or walking; or
> Use the upper extremities (including fingers, wrists, hands, arms, and shoulders).
>
> **11.00G** Neurological disorders may manifest in a combination of limitations in physical and mental functioning. We consider all relevant information in your case record to determine the effects of your neurological disorder on your physical and mental functioning. To satisfy the requirement described under 11.00G, your neurological disorder must result in a marked limitation in physical functioning and a marked limitation in at least one of four areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. If your neurological disorder results in an extreme limitation in at least one of the four areas of mental functioning, or results in marked limitation in at least two of the four areas of mental functioning, but

> you do not have at least a marked limitation in your physical functioning, we will consider whether your condition meets or medically equals one of the mental disorders body system listings, 12.00.
>
> **11.09 Multiple sclerosis (MS)** is a chronic, inflammatory, degenerative disorder that damages the myelin sheath surrounding the nerve fibers in the brain and spinal cord. The damage disrupts the normal transmission of nerve impulses within the brain and between the brain and other parts of the body, causing impairment in muscle coordination, strength, balance, sensation, and vision. There are several forms of MS, ranging from mildly to highly aggressive. Milder forms generally involve acute attacks (exacerbations) with partial or complete recovery from signs and symptoms (remissions). Aggressive forms generally exhibit a steady progression of signs and symptoms with few or no remissions. The effects of all forms vary from person to person.
>
> We evaluate your signs and symptoms, such as flaccidity, spasticity, spasms, incoordination, imbalance, tremor, physical fatigue, muscle weakness, dizziness, tingling, and numbness when we determine your ability to stand up, balance, walk, or perform fine and gross motor movements. When determining whether you have limitations of physical and mental functioning, we will consider your other impairments or signs and symptoms that develop secondary to the disorder, such as fatigue; visual loss; trouble sleeping; impaired attention, concentration, memory, or judgment; mood swings; and depression. If you have a vision impairment resulting from your MS, we may evaluate that impairment under the special senses body system, 2.00.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

The ALJ determined that Plaintiff did not meet Listing 1.04, stating:

> Though the claimant has a spinal condition, the record does not contain evidence showing compromise of a nerve root or the spinal cord, neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, or positive straight-leg raising test (sitting and supine). The claimant's spinal condition also does not manifest by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours. Finally, the record lacks evidence of pseudo claudication, established by findings on appropriate medically acceptable imaging, manifested by chronic non radicular

Page 13 of 18 – OPINION and ORDER

>pain and weakness, and resulting in inability to ambulate effectively. For these reasons, the undersigned concludes the evidence does not show that the severity of the claimant's spine condition meets or medically equals the criteria of listing 1.04.

Tr. 19.

Plaintiff argues that the ALJ erred in determining that the record does not contain evidence showing compromise of the nerve root or the spinal cord because an MRI showed compression at C5-C6. However, even if that is true, Plaintiff has not provided evidence of a neuro-anatomic distribution or pain, limitation of motion of the spine, motor loss, atrophy with associated muscle weakness or muscle weakness, sensory or reflex loss, or positive straight-leg raising test. Thus, even if the ALJ erred with respect to evidence of compromise of the spinal cord, Plaintiff has not shown that the ALJ reached the wrong conclusion about Listing 1.04A.

As to the listing for MS, Plaintiff points to her treating physician's report, discussed above. Dr. Cohan indicated in his report on July 24, 2017, that Plaintiff meets the listing for 11.09 MS for two reasons:

>Persistent disorganization of motor function in the form of paresis or paralysis, remote, or other involuntary movements, ataxia, and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, or peripheral nerve dysfunction) which occur singly or in combination,
>Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

Tr. 725. Dr. Cohan checked the box in front of each of the above descriptions. He also indicated that she demonstrated a loss of specific cognitive abilities that included "memory impairment, either short term (inability to learn new information), intermediate, or long term (inability to remember information that was known sometime in the past)," and "disturbance in mood,"

Page 14 of 18 – OPINION and ORDER

resulting in "marked difficulties in maintaining concentration, persistence, or pace." Tr. 725. Dr. Cohan also provided comments in the report afterwards stating that she met these listings "for the past 2-3 years (and) still has these difficulties." Tr. 726. He indicated that this condition limits Plaintiff's ability to function in even a sedentary job due to "poor concentration and short-term memory, and slow speed of mental processing." Tr. 726. Finally, Dr. Cohan confirmed that Plaintiff's symptoms would likely increase if she were placed in a competitive work environment. The ALJ disagreed with this assessment, stating:

> Regarding the diagnosis of multiple sclerosis, the record does not reflect disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities. The record also does not support a finding of a marked limitation understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself (see evaluation of listing 12.04 below). Therefore, the undersigned concludes the evidence does not support a finding that the severity of the claimant's multiple sclerosis condition meets or medically equals the criteria of listing 11.09. The medical source statement provided by the claimant's treating doctor (B14F) will be evaluated below.

Tr. 19. While the determination regarding whether Plaintiff's impairment meets or equals a listing is reserved to the Commissioner, the ALJ must properly consider the medical evidence in the record. Because, as discussed above, the ALJ did not properly consider Dr. Cohan's opinion, this issue must be reconsidered on remand.

### III. The ALJ failed to properly evaluate Plaintiff's subjective symptoms.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The

claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. *Id.*

In the second stage of the analysis, the ALJ must consider the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record. SSR 16-3p at *7-8. The ALJ will consider the "[l]ocation, duration, frequency, and intensity of pain or other symptoms" reported by the claimant, any medical sources, and any non-medical sources. *Id.* The ALJ's decision must contain "specific reasons for the weight given to the individual's symptoms, be consistent with and support by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* Additionally, the evidence upon which the ALJ relies must be substantial. *See Reddick*, 157 F.3d at 724; *Holohan v. Massinari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991). The ALJ must also "state specifically which symptom testimony" is being rejected and what facts lead to that conclusion. *Smolen v. Charter*, 80 F.3d 1273, 1284 (9th Cir. 2009) (citing *Dodrill*, 12 F.3d at 918). In rejecting claimant's testimony about the severity of her symptoms, the ALJ must give "specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1029, 1036 (9th Cir. 2007)).

In this case, the ALJ applied the requisite two-step framework, but the reasons he cited to discount portions of Plaintiff's subjective symptom testimony were not clear, and convincing. Discussing the testimony, the ALJ noted that Plaintiff "stated at the hearing she could not perform even sedentary level work because she would not be able to maintain focus and concentration, and she would not be able to maintain a work schedule on a full time basis." Tr.

24. Although this testimony was supported by the medical evidence provided by her treating physician, the ALJ determined it was "not convincing" because she "was not only able to maintain focus and concentration during the hearing, but she testified she is the person who primarily runs her household, which, for a house of four people and two pets, takes a significant amount of focus and concentration." The ALJ did not explain how her ability to concentrate and focus on short term events such as the hearing, or on the sporadic activities necessary to "run a household" would be transferrable to a full-time, sustained workday and work week. The ALJ also cited Plaintiff's "demonstrated adequate ability to report her symptoms to her treating physicians, explain whether medication was helping her not helping, understand her treatment plan, and follow through with treatment." Tr. 24. "She was able to follow her treatment plan so well, in fact, that she needed little medical attention during the period at issue outside of regular six-month well follow-up visits." The ALJ does not explain how the ability to describe her symptoms and her ability to seek and follow treatment plans – issues inherent to her physical health and well-being – could translate into the concentration, persistence, and pace necessary for full time employment. Additionally, the Court finds this to be another "Catch-22." Failure to follow a treatment plan is a reason often used to discredit a Plaintiff's subjective complaints, but here we see full compliance being used against her in the exact same way.

Next, the ALJ cited Plaintiff's "lack of treatment," which "strongly suggests the claimant's symptoms were not significantly limiting her ability to function as she reflected in her testimony." The ALJ notes that she saw her treating physician every 6 months, except for one missed appointment, and that she rigorously followed her treatment plan. Considering her condition was admittedly stable and she suffers from a disease that cannot be cured (MS), it is

unclear what further treatment Plaintiff should have been seeking. This is not a clear and convincing reasons to discredit her subjective complaints.

Finally, the ALJ essentially found that a limitation to sedentary work was appropriate due to "pain, numbness and fatigue, all of which are very common symptoms of multiple sclerosis and Sjogren's syndrome." Tr. 24. "The claimant has provided a treating source opinion that suggests she was significantly limited during the period at issue, but, as discussed below, this is as unconvincing as the claimant's testimony because both lack support in the treatment record." Tr. 24. Essentially, the ALJ substituted his own medical opinion for that of the treating physician. As discussed above, that opinion was improperly rejected. Therefore, this reason for rejecting Plaintiff's subjective symptom testimony is not clear or convincing.

## ORDER

Based on the foregoing, the decision of the Commissioner is REVERSED and REMANDED for further proceedings. On remand the ALJ shall properly consider and weigh the opinion of treating physician Dr. Cohan and re-evaluate Plaintiff's subjective complaints and whether she meets the listing for Multiple Sclerosis in light of that opinion. The lay witness testimony should also be reconsidered in light of the above.

It is so ORDERED and DATED this 16th day of June, 2020.

/s/ Mark D. Clarke
MARK D. CLARKE
United States Magistrate Judge